# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

### IN ADMIRALTY

### CASE NO.:  6:19-cv-159-ORL-31-TBS

GEICO MARINE INSURANCE COMPANY,

        Plaintiff,

vs.                                   **DISPOSITIVE MOTION**

HENRY BARON,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, GEICO Marine Insurance Company (hereinafter "GEICO Marine") through undersigned counsel, hereby moves this Court to enter judgment on the pleadings in its favor and against the Defendant, HENRY BARON (hereinafter "Baron"), on the ground that there are no genuine issues of material fact and GEICO Marine is entitled to judgment in its favor as a matter of law.

## I.    INTRODUCTION

This case arises out of a tragic accident that occurred near West End, Grand Bahama Island when an uninsured boater ran over Baron while he was in the water spear fishing with members of his family.  When he discovered that the other boater did not have liability insurance, Baron notified GEICO Marine and sought to recover uninsured boater and medical payments benefits which he contends are available under his policy.

After investigating the claim, GEICO Marine determined that the claim was not covered because Baron was not aboard his boat at the time of the injury and there was no collision between his vessel and the uninsured vessel as required for coverage.  GEICO Marine commenced this action seeking a declaration of the parties' rights and obligations under the subject policy. (DE 1). Baron subsequently filed a Counterclaim, asserting claims for breach of contract, fraudulent inducement, and for uninsured boater benefits. (DE 18). For the reasons more fully explained below, the clear and unambiguous language of the policy does not afford Baron coverage for uninsured boater benefits or for medical payments coverage. Moreover, Baron fails to state a proper cause of action for fraudulent inducement as the policy's language contradicts Baron's claim. Accordingly, GEICO Marine is entitled to judgment on the pleadings as a matter of law.

## II.   STATEMENT OF PERTINENT FACTS IN THE PLEADINGS

1.      Baron is the owner of a 32-foot 2018 Sea-Vee cruiser bearing Hull Identification No. SXJ02077K718 ("the Vessel"). (DE 1, ¶ 9; DE 22, ¶ 9).

2.      On July 20, 2018, Baron and members of his family decided to go spear fishing in the waters of the West End of Grand Bahama Island in the Bahamas. (DE 1, ¶¶ 15, 18; DE 22, ¶¶ 15, 18).

3.      Baron and his family boarded the Vessel and left the marina at Blue Marlin Cove Resort and travelled a short distance off shore. (DE 1, ¶ 16; DE 22, ¶ 16).

4.      When the Vessel arrived at the dive site, an anchor was deployed. (DE 1, ¶ 17; DE 22 ¶ 17).

5.      All members of the party left the Vessel and entered the water to spear fish. (DE 1, ¶ 19; DE 22, ¶ 19).

6.      After a short time in the water, one of Baron's sons returned to the Vessel and was standing on the deck when he observed another vessel (the Uninsured Boater") approaching the dive area. (DE 1, ¶ 20; DE 22, ¶ 20).

7.      As the Uninsured Boater approached, Baron was snorkeling in the water away from the Vessel. (DE 1, ¶ 21; DE 22, ¶ 21; DE 18, ¶ 9).

8.      As a result of the Uninsured Boater's negligence, the Uninsured Boater struck Baron causing serious bodily injuries, including amputation of his left arm. (DE 1, ¶ 22; DE 22, ¶ 22).

9.      A true copy of Baron's insurance policy issued by GEICO Marine as Policy BUS5794215 for the period of March 1, 2018 through March 1, 2019 (the "Policy"), minus the Policy's Declarations Page, has been authenticated by the parties. (DE 18, ¶17, Exh. B; DE 21, ¶ 17).

10.     The Policy states, in pertinent part, that the term "**uninsured boat**" means a boat owned or operated by an **"uninsured boater."** (DE 1, ¶ 30; DE 22, ¶ 30; DE 18-2, Exh B. at p. 4).

11.     Moreover, the Policy defines the term "**uninsured boater**" as "an owner or operator of a boat…who is legally responsible for a collision with an **"insured boat,"** and: (1) To whom no liability policy applies…." (DE 18-2, Exh. B at p. 4).

12.     For purposes of uninsured boater coverage, the Policy states that GEICO Marine agreed to "pay the damages which, because of **"bodily injury"** an **"insured"**

received aboard an **"insured boat,"** an **"insured"** is legally entitled to recover from an **"uninsured boater"** as the result of a collision by an **"uninsured boat"** with an **"insured boat."** (DE 18-2, Exh. B at p. 12).

13.     The Policy states further that there is no uninsured boater coverage "…where no evidence of physical contact exists between an **"insured boat"** and an **"uninsured boat."** (DE 18-2, Exh. B at p. 12).

14.     There was no collision between the Vessel and the Uninsured Boater's vessel. (DE 1, ¶ 34; DE 22, ¶ 34).

15.     At the time of his injury, Baron was not aboard the Vessel. (DE 1, ¶ 36; DE 22, ¶ 36).

16.     The Policy provides medical payments coverage in the amount of $1,000.00 under section F. (DE 1, ¶ 38; DE 22, ¶ 38).

17.     In the medical payments section of the Policy, GEICO Marine agreed to "pay the necessary medical and funeral expenses resulting from a **"bodily injury"** to the **"insured"** or a guest from an **"accident"** which occurs while in, upon, boarding, or leaving an **"insured boat"** as well as injury to an **"insured"** or a guest water skiing from an **"insured boat."** (DE 18-2, Exh. B at p. 10).

### III.     MEMORANDUM OF LAW

**A.     *The controlling standard and the applicable law.***

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). As this Court has explained, "[j]udgment on the pleadings is appropriate

4

when 'there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.'" *Garden Meadow, Inc. v. Smart Solar, Inc*., 24 F. Supp. 3d 1201, 1206 (M.D. Fla. 2014) (quoting *Hawthorne v. Mac Adjustment, Inc*., 140 F.3d 1367, 1370 (11th Cir. 1998)).

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999). The district court, when evaluating a motion for judgment on the pleadings, must accept all of the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *See Cunningham v. Dist. Attorney's Office for Escambia Cnty*., 592 F.3d 1237, 1255 (11th Cir. 2010). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Moreover, marine insurance policies are maritime contracts governed by maritime law. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co*., 348 U.S. 310, 321 (1955 (recognizing that "[f]ederal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law."))). "But, when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in

admiralty law." *Id.* The controlling substantive law, therefore, is federal maritime law, but this Court may apply state law as long as it is not inconsistent with maritime law.

**B.**   *The Pleadings Establish that Baron is Not Entitled to Coverage under the Policy as a Matter of Law.*

The Policy provides uninsured boater coverage in the amount of $300,000.00 and medical payments coverage of $1,000.00.  (DE. 1, p. 7).[1]  The unambiguous terms of the Policy provide that uninsured boater coverage applies to "the damages which, because of '**bodily injury**' an '**insured**' received aboard an '**insured boat**,' an '**insured**' is legally entitled to recover from an '**uninsured boater**' as the result of a collision by an '**uninsured boat**' with an '**insured boat**.'" (DE 18-2, Exh. B at p. 12). The Policy defines "**insured boat**" as "the boat identified on the Declarations Page …." (DE 18-2, Exh. B at p. 3). Moreover, an "**uninsured boat**" is defined by the Policy as "a boat owned or operated by an '**uninsured boater**.'" (DE 18-2, Exh. B at p. 4). The term "**uninsured boater**" means "an owner or operator of a boat other than an '**insured boat**' named on the Declarations Page, who is legally responsible for a collision with an '**insured boat**,' and: 1. To whom no liability policy applies; or 2. Who cannot be identified (such as a hit and run operator)." (DE 18-2, Exh. B at  p. 4).  Thus, uninsured boater coverage is available under the plain language of the Policy **only** if the following

---

[1] GEICO Marine refers the Policy's Declarations Page, which was attached to GEICO Marine's Complaint and has been re-attached to this Motion as Exhibit "A," because although Baron included the Policy as an exhibit to his Counterclaim, he failed to include the Policy's Declarations Page. As the Eleventh Circuit Court of Appeals has explained, a court may consider documents attached to a motion for judgment on the pleadings without converting the motion to one requesting summary judgment if the documents are either central to the plaintiff's claim and their authenticity has not been challenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

requirements are met:  First, the insured must be aboard the insured boat.  Second, there must be a collision between the insured boat and another boat.  Third, the other boat must be uninsured.  While the third element may be satisfied in this case, the other two clearly are not. Furthermore, the boat that struck Baron does not meet the definition of uninsured boater, because the other boat is not alleged to be "legally responsible for a collision with an '**insured boat.**'" *See* DE 18-2, Exh. B at p. 4.

Baron specifically alleges in his Counterclaim that he "was in the water near his vessel when he was struck by another vessel."  (DE 18, ¶ 9).  He alleges that he suffered injuries as a result and that the other vessel was uninsured.  (DE 18, ¶¶ 10, 12).  These allegations are then incorporated into each count of the Counterclaim.  Noticeably absent from the Counterclaim, however, is any allegation that the other boat collided with Baron's Vessel.  Indeed, in his Amended Answer and Affirmative Defenses, Baron admits there was no collision between his Vessel and an uninsured vessel. (DE 1, ¶ 34; DE 22, ¶ 34). Critical components of his claim for uninsured boater coverage are, therefore, absent.  By his own allegations, Baron was not "aboard an '**insured boat**;'" the other boat does not meet the policy definition of uninsured boater; and there was no "collision by an '**uninsured boat**' with an '**insured boat**.'" Accepting Barons allegations as true, the requirements for uninsured boater coverage simply do not exist and Counts I and II of the Counterclaim fail to state claims upon which relief may be granted.

In interpreting a policy of insurance, it is well established that "clear and unambiguous policy terms should be given their plain, ordinary and generally accepted meaning" and without reference to extrinsic evidence. *Taurus Holdings, Inc. v. U.S. Fid.*

& *Guar. Co.*, 913 So. 2d 528 (Fla. 2005); *Certain British Underwriters at Lloyds of London, England v. Jet Charter Serv., Inc.,* 789 F.2d 1534 (11th Cir. 1986). Moreover, while ambiguous exclusionary provisions must be construed broadly in favor of finding coverage, this "'rule of adverse construction' is a 'secondary rule of interpretation' or a 'rule of last resort,' which should not be used if the parties' intent can otherwise be determined from a plain reading of the policy." *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 734 F. Supp. 2d 1304, 1314 (S.D. Fla. Oct. 27, 2010) (citing *Emerald Pointe Prop. Owners' Ass'n, Inc. v. Commercial Constr. Ind.*, 978 So. 2d 873, 878 n. 1 (Fla. 4th DCA 2008)). Accordingly, if a policy provision is "clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision." *Id.* (citing *BMW of North Am., Inc. v. Krathen*, 471 So. 2d 585 (Fla. 4th DCA 1985), *rev. denied*, 484 So. 2d 7 (Fla. 1986)).

The fact the term "collision" is not defined in the Policy does not alter the analysis. In fact, "collision" has an established meaning under federal maritime case law. *See Fischer v. S/Y Neraida*, 508 F.3d 586, 589 n. 1 (11th Cir. 2007) (explaining that an "allision occurs when a moving vessel strikes a stationary object" while a "collision occurs when a moving vessel strikes another moving vessel."). Additionally, the lack of a definition does not create an ambiguity and it is settled that a provision is not ambiguous simply because it is complex and requires analysis to interpret it – even if different judges might apply alternative interpretations of the specific language. *Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Surety Co. of Am.,* 379 Fed. Appx.

8

906 (11th Cir. 2010) (unpub.); *Garcia v. Fed. Ins. Co.,* 969 So. 2d 288 (Fla. 2007); *Flores v. Allstate Ins. Co.,* 819 So. 2d 740 (Fla. 2002). And critically, the "reasonable expectations" of the insured are not considered in the interpretation of clear and unambiguous policy language. *Office Depot, Inc.,* 734 F. Supp. 2d at 1315 (citing *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135 (Fla. 1988)).

Applying the policy language as written, it is clear that the Counterclaim does not plead claims within the uninsured boater coverage of the Policy. Therefore, it is appropriate for this Court to grant judgment in GEICO Marine's favor with respect to Counts I and II of Baron's Counterclaim.[2]

**C.**   ***Baron is not entitled to medical benefits under the clear terms of the Policy.***

In Count I of the Counterclaim, Baron purports to allege a claim for  medical benefits under the Policy.  (DE 18, ¶ 22). As with his claim for uninsured boater coverage, however, this argument fails.  Under the clear terms of the policy, medical benefits coverage applies only to injuries "from an '**accident'** which occurs while in, upon, boarding, or leaving an '**insured boat'** as well as injuries to an '**insured'** or a guest waterskiing from an '**insured boat'**." (DE. 18, p. 10).  The Counterclaim contains no allegation that would bring it within the scope of the medical payments coverage. To the

---

[2]  In Count II of the Counterclaim, Baron alleges that the policy "included coverage for underinsured / uninsured" boats.  (DE. 18, ¶ 27).  This is not accurate.  While the policy does provide uninsured boater coverage, it clearly does not provide underinsured boater coverage. A simple review of the policy shows why this is true. The definition of uninsured boater is one "[t]o whom **no liability policy applies**." (DE. 18, p. 11) (emphasis added). The definition does not include a boater who has inadequate coverage, but only to one who has no coverage at all or who cannot be identified.  To interpret this language to apply to ***under***insured boaters, as Baron suggests, would ignore the plain and unambiguous language of the Policy. The Policy simply does not extend to situations involving damages caused by an underinsured boater.

contrary, Baron alleges merely that he "was in water near his vessel when he was struck by another vessel." (DE. 18, ¶ 9). Nowhere does he allege that he was "in, upon, boarding, or leaving" the vessel. In fact, the allegations of the Counterclaim put Baron's claim clearly outside the scope of the medical payments coverage permitted under the Policy. Baron's claim for medical payments benefits, therefore, should be dismissed.

### D.   *The Counterclaim Fails to State a Claim for Fraudulent Inducement.*

"A cause of action for fraud in the inducement contains four (4) elements: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F. 3d 802, 808-09 (11th Cir. 2010). Furthermore, to state a valid claim, the Counterclaim must allege facts establishing that Baron's reliance on the alleged misrepresentation was reasonable. *Id.* at 809. Baron's allegations fall woefully short of stating a claim for fraudulent inducement. Even accepting the allegations as true, they do not allege a false statement regarding a material fact, the statement maker's knowledge that the statement was false or reasonable reliance on such statement by Baron.

There is only one paragraph of the Counterclaim that even attempts to allege a misstatement of material fact. In paragraph 42, Baron alleges that GEICO Marine's online application indicated that such "'Uninsured Boaters' coverage **would** cover instances of 'Uninsured Boaters' and instances of 'hit and run' boaters." (DE. 18, ¶ 42) (emphasis in original). While the Counterclaim describes this alleged statement as a

10

misrepresentation, the Policy shows that coverage would apply in instances of uninsured boaters and hit and run boaters as long as the other terms of coverage were met.   The clear policy language conflicts with the allegations of the Counterclaim and negates the claim there was any misrepresentation of material fact.   "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F. 3d 1189, 1206 (11th Cir. 2007); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").[3] Applying this rule and examining the terms of the Policy, there was no misrepresentation of material fact and thus, Count III fails to state a claim.

It is equally clear that "reliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1343 (S.D. Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir. 2000). "[I]t is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties." *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996).  In light of this well settled rule, Baron could

---

[3] The fraudulent inducement claim is really an attempt to create coverage by estoppel, contrary to the well-established rule that coverage generally cannot be created or extended by estoppel. *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989) (recognizing while that the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, it cannot be used to create or extend coverage).

not have reasonably relied on the alleged misrepresentations made by GEICO Marine as a matter of law.

In *Hill v. State Farm Ins. Co.*, 181 F. Supp. 3d 1980 (M.D. Fla. 2016), the district court rejected a similar fraud in the inducement claim based on an alleged misrepresentation by the insurance company's agent.  The plaintiff in *Hill* alleged that State Farm's agent represented "that there would not be any negative consequences if he was to stop paying the premiums on the whole life insurance policies, and that the policies would not cancel, they just would not increase in value as much."  *Id.* at 986 (internal quotations omitted). The plaintiff alleged that this statement fraudulently induced him to enter into whole life insurance policies.  *Id.*   The Court rejected the plaintiff's fraudulent inducement claim, because "both policies specially addressed what would happen should Hill fail to pay his premiums."  *Id.*   For this reason, the Court concluded that he could not have justifiably relied on any representation concerning the consequences of failing to pay his premiums and could not state a claim of fraudulent inducement regarding either policy as a matter of law.  *Id.*

The same reasoning applies in the instant case. Baron's alleged reliance upon misrepresentations he attributes to GEICO Marine's agent is unreasonable as a matter of law.  The Policy clearly explains the scope of coverage and those instances where it will and will not apply.  Because Baron's reliance on the alleged misrepresentations were unreasonable as a matter of law, the fraudulent inducement claim fails to state a claim and judgment should be entered in GEICO Marine's favor.

Furthermore, rather than fraudulent inducement, the real gist of Count III is that GEICO Marine did not fully explain the scope and limitations of the uninsured boater coverage.   Baron has not alleged **any** affirmative misrepresentation. There is no allegation of any relationship between the parties that would give rise to a legal duty to explain the details of the uninsured boater coverage and all of the various circumstances where it would or would not cover an injury. Pursuant to Federal Rule of Civil Procedure 9(b), Baron's fraudulent inducement claim must have been plead with particularity. It is well recognized that, under Rule 9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud. *Am. Dental Ass'n v. Cigna Corp*. 605 F.3d 1283, 1291 (11th Cir. 2010) (citing *Brooks v. Blue Cross & Blue Shield of Fla*., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)). Moreover, as a matter of public policy, permitting a claim against an insurer for failure to fully explain to a potential insured all of the conditions and nuances of coverage would result in virtually unlimited liability for insurance companies. In each and every instance where a claim was denied, the insured could file suit and simply allege that the carrier never adequately explained the scope of coverage. Clearly, that is not the law.

Additionally, Baron is legally charged with knowledge of the contents of the Policy. *Jacobs v. Chadbourne*, 733 Fed. Appx. 483, 485 (11th Cir. 2018) (unpub).  Thus, regardless of whether Baron actually read the policy, he is charged with knowledge of its contents.  If the uninsured boater coverage did not meet Baron's expectations, it was

incumbent upon him to contact GEICO Marine to request a different type of coverage or to cancel his policy and seek coverage elsewhere.  In fact, the Policy gives Baron the right to "cancel the policy at any time by providing "**us**" with advance notification of the cancellation date."   (DE 18-2, Exh. B at p. 18).  For all of these reasons, Count III fails to state a claim, and thus, GEICO Marine is entitled to a judgment in its favor on the pleadings.

**E.    *Baron's Affirmative Defenses Do Not Bar Judgment in GEICO Marine's Favor.***

Baron's affirmative defenses to GEICO Marine's Complaint for declaratory relief, although amended, are legally insufficient and therefore entitle GEICO Marine to a final judgment on the pleadings. In addition to many of the defenses being legally insufficient, several of the "defenses" raised by Baron are not affirmative defenses at all, but rather mere denials or irrelevant assertions.

For example, Baron's affirmative defenses 1, 2, 10, 12, 13, 14, 16, 17, 18, 19, and 20 are legally insufficient because they are either mere denials or irrelevant assertions. The following defenses are mere denials and do not present a bar to judgment in GEICO Marine's favor:

> **First Affirmative Defense.** The losses and injuries sustained by HENRY BARON were caused, on information and belief, by an under-insured or uninsured boater, the occurrence resulted from a sudden and accidental event, and the losses and injuries occurred while the policy was in force.

> **Second Affirmative Defense.**   Plaintiff-GEICO is not entitled to declaratory judgment in its favor because at all times material, Plaintiff held itself out as selling "Uninsured Boater's" coverage, when in fact, GEICO now claims that HENRY BARON—or anyone—could <u>only</u> obtain such

coverage if all three of the following conditions occur: 1. An insured's vessel is struck, and 2. The insured is in his vessel, and 3. The vessel is uninsured.

**Twelfth Affirmative Defense**.  Taken collectively the terms and conditions of the stated policy including all endorsements, amendments, riders, the insurance application, etc., do provide coverage for the injuries sustained by HENRY BARON.

**Thirteenth Affirmative Defense.**  Taken collectively the terms and conditions of the policy, including all endorsements, amendments, riders, the insurance application, etc., terms and conditions of the stated  policy do provide coverage for Medical Payments.

*See* DE 22 at ¶¶ 43, 44, 54, 55.

None of these affirmative defenses meet the pleading requirements of Federal Rule of Civil Procedure 8. These defenses are mere denials and, as such, pose no bar to GEICO Marine obtaining judgment on the pleadings.  *See Smith v. City of New Smyrna Beach*, Case No. 6:11-cv-1110-ORL-31-KRS, 2011 WL 6099547, *1 (M.D. Fla. 2011) (striking affirmative defenses that were mere denials of one or more elements of the Plaintiff's claim).

Furthermore, Baron's affirmative defenses 10, 14, 16, 17, 18, 19, and 20 are not defenses at all, but rather conclusory statements that fail to afford Baron any relief. Those affirmative defenses state:

**Tenth Affirmative Defense.**  The knowledge and actions of an employee are imputed to its employer.  GEICO obtained knowledge and made representations through its employee of HENRY BARON's expectations for uninsured boater's coverage.

**Fourteenth Affirmative Defense.** The laws of the State of Florida may supplement maritime law; when no federal admiralty decisional rule or law exists on a disputed point to a maritime contract, then state decisional law applies.

**Sixteenth Affirmative Defense.** Agents working for GEICO are agents of GEICO, not of HENRY BARON, and their statements and representations are binding on GEICO.

**Seventeenth Affirmative Defense.** GEICO sells boating policies within the State of Florida and it is subject to the laws of the State of Florida in selling policies of insurance to citizens of Florida.

**Eighteenth Affirmative Defense.** The policy at issue, sold by GEICO, is a Florida policy and subject to Florida law.

**Nineteenth Affirmative Defense.** The policy at issue, sold by GEICO, is a Florida policy and must meet the minimum requirements of Florida law.

**Twentieth Affirmative Defense.** The at-issue insurer and policy was subject to a "Civil Remedy Notice" which provided such insurer with a 60-day safe harbor within which to pay policy limits to its insured.

*See* DE 22 at ¶¶ 52, 56, 58, 59, 60,  61, 62.

The Tenth Affirmative Defense raised by Baron is simply a conclusory statement without any supporting facts as required under Rule 9(b).  Additionally, the reference to Baron's "expectations for uninsured boater's coverage" are irrelevant because, as explained above, the plain language of the Policy controls. *See Office Depot, Inc.,* 734 F. Supp. 2d at 1315 (recognizing that the reasonable expectations of an insured are not properly considered in the interpretation of clear and unambiguous policy language).

Defendant's affirmative defenses 14, 16, 17, 18, and 20 are not defenses at all, but simply conclusory statements.  Baron's Fourteenth Affirmative Defense simply states a

well-known federal rule that a district court may apply state law where no federal admiralty rule exists to decide a disputed issue. However, GEICO Marine's position that the clear and unambiguous language of the Policy does not afford Baron coverage is consistent under either federal or Florida contract interpretation principles. The Sixteenth Affirmative Defense is simply a conclusory statement alleging that the statements and actions made by GEICO Marine's agents are binding on GEICO Marine. Similarly, Baron's Seventeenth and Eighteenth Affirmative Defenses simply state that GEICO Marine, and its subject policy, are subject to the laws of Florida, without providing any explanation or notice to GEICO Marine as to why that is relevant.   Similarly, the Nineteenth Affirmative Defense does not provide GEICO Marine with any explanation or notice as to what "minimum requirements" may or may not have been met. Lastly, the Twentieth Affirmative Defense merely informs this Court that Baron filed a Civil Remedy Notice against GEICO Marine—it does not explain why judgment cannot be afforded in GEICO Marine's favor.

Next, Baron's Third, Fourth, and Ninth Affirmative Defenses  all seek to avoid the coverage defenses asserted by GEICO Marine alleging that Baron was fraudulently induced to accept the insurance policy at issue. (DE 22 at ¶¶ 45, 46, 51). However, as explained above, these defenses are substantively insufficient.  As case law makes clear, "reliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the expressed terms of the ensuing written agreement." *Eclipse Medical*, 262 F. Supp. 2d at 1343. Because the essence of these affirmative defenses is fraud in the inducement and there is a subsequent written

agreement—the Policy—any alleged reliance by Baron on statements attributed to GEICO Marine was unreasonable as a matter of law.

Baron's Fifth, Seventh, and Eighth Affirmative Defenses all touch upon an argument that certain provisions of the Policy are void against public policy. Specifically, these affirmative defenses state:

> **Fifth Affirmative Defense**.  The provision being asserted as an exclusion by GEICO is void against public policy in that, *inter alia*, it fails to offer reasonable "Uninsured Boater's" coverage, but in fact only covers a limited number of scenarios.

> **Seventh Affirmative Defense**. The provision being asserted as an exclusion by GEICO is void against public policy and Florida law in that, *inter alia*, it fails to comply with Florida insurance law in offering insurance for "uninsured" tortfeasors.

> **Eighth Affirmative Defense**.  The provisions being asserted as an exclusion by GEICO are void against public policy or Florida law in that, *inter alia*, they fail to provide "uninsured" coverage which is co-extensive to an insured's liability coverage.

*See* DE 22 at ¶¶ 47, 49, 50.  While public policy could potentially be a valid affirmative defense, the affirmative defenses asserted by Baron are clearly insufficient to bar judgment in GEICO Marine's favor because they failed to provide sufficient notice to GEICO Marine. Nowhere does Baron explain what tenant of public policy he is referring to, the source of that policy, or why it rendered part or all of the policy void. Furthermore, these defenses refer to the "provisions being asserted as an exclusion," but fail to state what provision of the Policy is void.

Relatedly, Baron's Sixth and Fifteenth Affirmative Defenses are not applicable to the instant action. These affirmative defenses state:

> **Sixth Affirmative Defense**. The forms, endorsements, applications, policy, amendments, etc. are void in that they were not approved by the Florida Department of Insurance.
>
> **Fifteenth Affirmative Defense.** Plaintiff failed to timely give notice to Defendant or file its Complaint within the time allotted for coverage defenses or exclusions under Florida law.

*See* DE 22 at ¶¶ 48, 57.

The Sixth Affirmative Defense appears to be a reference to section 627.410(1), Florida Statutes, which generally requires that insurance forms be filed with and approved by the Department of Insurance before they may be issued in the State. *See* § 627.410(1), Fla. Stat. (2018) ("A basic insurance policy or annuity contract form, or application form where written application is required and is to be made a part of the policy or contract, . . . may not be delivered or issued for delivery in this state unless the form has been filed with the office by or on behalf of the insurer that proposes to use such form and has been approved by the office or filed pursuant to s. 627.4102."). Similarly, the Fifteenth Affirmative Defense appears to refer to section 627.426(2), Florida Statutes, which prohibits a liability insurer from denying coverage based on a particular coverage defense unless certain written notice is provided by the insurer within a prescribed time period. Importantly, however, both of these defenses overlook the fact that these subsections do not apply to wet marine insurance policies. *See* § 627.401(3), Fla. Stat. (2018) ("No provision of this part of this chapter applies to: . . . (3) Wet marine and

transportation insurance, except ss. 627.409, 627.420, and 627.428."). The statutory definition of "wet marine and transportation insurance" includes "insurance upon vessels, crafts, and hulls and of interest therein or with relation thereto and "contracts of marine protection and indemnity insurance." *See* § 624.607(2)(a), (b), Fla. Stat. (2018). Because the Policy in this case clearly covers a vessel and provides marine protection and indemnity insurance, is excluded from the filing, approval and notice requirements which appear to form the bases for Baron's Sixth and Fifteenth Affirmative Defenses.[4]

Lastly, Baron's Eleventh Affirmative Defense argues that, pursuant to "Florida law, ambiguities are construed against the insurer and in favor of the insured." DE 22 at ¶ 53. However, as explained *infra*, this canon of contract interpretation does not apply when the policy language at issue is clear and ambiguous. *See Office Depot, Inc.*, 734 F. Supp. 2d at 1314. Accordingly, Baron cannot evade judgment in GEICO Marine's favor on this affirmative defense.

## IV.  CONCLUSION

There are no issues to be decided by the trier of fact.  The material facts are established by the pleadings, and all that is required is a simple construction of the Policy by the Court.  On the foregoing authority, GEICO Marine is entitled to a judgment on the

---

[4] Moreover, as the Florida Supreme Court has explained in *AIU Insurance Company*, section 627.426(2), Florida Statutes has not been interpreted to give an insured coverage which is expressly excluded from the policy when the insurer does not comply with the terms of the statute. *See* 544 So. 2d at 999. Here, the plain language of the Policy's uninsured boater's coverage provision does not afford Baron coverage for his claim, and thus, section 627.426(2) is inapplicable and does not bar judgment in GEICO Marine's favor.

pleadings declaring that Baron is not entitled to coverage under the Policy, and furthermore, that he has failed to plead a valid claim for fraudulent inducement.

WHEREFORE, GEICO Marine respectfully moves the Court to enter final judgment in its favor finding that the policy does not provide coverage for Baron's claims, and awarding further relief deemed just and proper under the circumstances.

Respectfully submitted,

**GRAYROBINSON, P.A.**
Counsel for Plaintiff,
GEICO Marine Insurance Company

/s/ *Ted L. Shinkle*
TED L. SHINKLE, ESQ.
Florida Bar No. 0608051
LESLEY-ANNE MARKS, ESQ.
Florida Bar No. 107009
1795 West NASA Blvd.
Melbourne, Florida 32901
Telephone:  (321) 727-8100
Facsimile:  (321) 984-4122
Email:     ted.shinkle@gray-robinson.com
Secondary Email:
    lesley-anne.marks@gray-robinson.com
    jodi.aliano@gray-robinson.com

## <u>CERTIFICATE OF SERVICE</u>

I  hereby certify that a true and correct copy of the foregoing was served via Email

transmission through the CME/ECF system on this 17th day of  May, 2019 to Frank D.

Butler, Esq., Frank D. Butler, PA, 10550 U.S. Highway 19 North, Pinellas Park, Florida

at fdblawfirm@aol.com; kmay@fightingforfamilies.com; and

pmartin@fightingforfamilies.com, attorney for Defendant.

**GRAYROBINSON, P.A.**
Counsel for Plaintiff

/s/ *Ted L. Shinkle*
TED L. SHINKLE, ESQ.