**GEICO MARINE INSURANCE**
**COMPANY**,

   Plaintiff,

**v.**          **Case No:** 6:19-cv-159-Orl-31TBS

**HENRY BARON**,

   Defendant.

_____/

## DEFENDANT'S/COUNTER-CLAIMANT'S, HENRY BARON, ANSWER TO GEICO'S MOTION FOR JUDGMENT ON THE PLEADINGS

 Defendant/Counter-Claimant, HENRY BARON, by and through the undersigned counsel, files his Answer To GEICO's Motion For Judgment On the Pleadings and demonstrates to the Court the following:

## BACKGROUND

1. The Counter-Plaintiff and Counter-Defendant entered a contract of marine insurance within the State of Florida for the policy period of March 1, 2018 through March 1, 2019.

2. Counter-Plaintiff, HANK BARON, at all material times, was and is a resident of Palm Bay, Florida**.**

3. At all material times, Defendant, GEICO, was and is an insurance company authorized to transact insurance business in the State of Florida.

4. On March 1, 2018, Plaintiff, HENRY BARON, entered into a contract of insurance for his marine vessel, a 2018 32-foot Sea-Vee Cruiser bearing a Vessel Identification Number of

SXJ02077K718 (hereinafter referred to as 'the vessel'), with Defendant, GEICO (Policy Number BUS5794215).

5. On July 20, 2017, Plaintiff transported his newly purchased vessel to the waters near West End, Grand Bahamas Island.

6. Aboard the stated vessel were the insured-Counter-Plaintiff and four family members.

7. Counter-Plaintiff HENRY BARON was in the water near his vessel when he was struck by another vessel.

8. At that time HENRY BARON suffered grievous bodily injury, complete loss of his arm.

9. The injuries suffered by HENRY BARON were directly and proximately caused by the negligence of the owner/operator of the offending vessel.

10. The operator/owner of the offending vessel was uninsured.

11. The policy issued through Counter-Defendant, GEICO, to HENRY BARON, contained an uninsured boater provision providing benefits in the amount of $300,000.00.

12. Counter-Plaintiff timely filed a claim for benefits with Counter-Defendant, GEICO.

13. Counter-Defendant, GEICO, denied Counter-Plaintiff's claim by sending him a letter through the U.S. Postal Service, attached to BARON's Counter-Claim at D.E. 17 as "Exhibit A".

14. BARON's Counter-Claim contains three Counts, Breach of Contract, Claim for Uninsured Boater Benefits, and a Count For Fraudulent Inducement. (D.E. 17)

15. BARON's Counter-Claim describes in detail his procurement of insurance through GEICO by applying through GEICO's on-line application process. (D.E. 17, paras 34-38.)

16. BARON's Counter-Claim also describes in detail how even after he completed the on-line application he also called GEICO to obtain assurances, and did receive assurances, that his

request for uninsured boater's coverage would cover the uses he intended with his family. (i.e., snorkeling, diving, water-skiing) (D.E. 17, para 39)

17. At no time did the GEICO <u>representative</u> advise HENRY BARON that the Uninsured Boater coverage being sold by GEICO would ***only*** *apply if all three of the following existed:* 1. another vessel struck HENRY BARON's vessel *and* 2. HENRY BARON was in the vessel *and* 3. the other vessel was *un*-insured. (D.E. 17, para 40)

18. GEICO's <u>application</u> did not apprise HENRY BARON that he would be able to collect uninsured benefits ***only*** if: 1. another vessel struck HENRY BARON's vessel *and* 2. HENRY BARON was in the vessel *and* 3. the other vessel was *un*-insured. (D.E. 17, para 41)

19. GEICO's on-line application indicated that such "Uninsured Boater's" coverage ***would*** cover in instances of "Uninsured Boaters" and in instances of "hit-and-run" boaters. (D.E. 17, para 42)

20. Prior to any discovery being conducted by either side, and shortly after BARON filed his Amended Answers and Affirmative Defenses (D.E. 22) on 5-6-19 to GEICO's Declaratory Judgment Complaint, GEICO filed this Motion For Judgment on the Pleadings. (D.E. 24) on 5-17-19.

## ARGUMENT

The 11th Circuit has stated

> We review a judgment on the pleadings de novo. See Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir.1996) (citing Ortega v. Christian, 85 F.3d 1521, 1524–25 (11th Cir.1996)). <u>Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.</u> See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir.1998) (citing Hebert Abstract Co. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir.1990)); see also Rule 12(c),

Fed.R.Civ.P. When we review a judgment on the pleadings, therefore, <u>we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party</u>. See Ortega, 85 F.3d at 1524 (citing Swerdloff v. Miami Nat'l Bank, 584 F.2d 54, 57 (5th Cir.1978)). The <u>complaint may not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "</u> Slagle, 102 F.3d at 497 (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) & citing Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811, 113 S.Ct. 2891, 2916–17, 125 L.Ed.2d 612 (1993)).

<u>Hawthorne v. Mac Adjustment, Inc</u>., 140 F.3d 1367, 1370 (11th Cir. 1998).  (Underline added.)

In the present case, GEICO, which filed the original declaratory action against Mr. BARON, is the movant. Therefore, here it is the plaintiff, GEICO, who is asking the Court to find not only that the "defendant"-HENRY BARON has no viable *factual* or *legal* defenses to GEICO's complaint, but also that BARON's Counterclaim has no factual and legal merit. As the 11th Circuit noted above, there must be "no material facts in dispute", the Court is confined to accept all of BARON's facts as true, and the Court cannot grant judgment on the pleadings unless if appears beyond doubt that BARON can prove no set of facts supporting his claim which would entitle BARON to relief.

The Middle District (Kovachevich) earlier this year denied a defendant's motion for judgment on the pleadings because it would require the court to go outside the pleadings.  In <u>Kampert v. Raymond James Financial Services, Inc.</u>, 2019 WL 2475972 (M.D. Feb. 2019) the court declined Raymond James' 12(c) motion against a putative class action who claimed violations of the Fair Credit Reporting Act, stating

 The determination of both the exact purpose of the consumer report and Plaintiff's relationship to Defendant necessarily <u>requires the Court to look outside of the four corners of the pleadings</u>. Accordingly, <u>the pleadings alone fail to demonstrate that Defendant is entitled to judgment as a matter of law</u>. Further, the Court declines to exercise its broad discretion to convert Defendant's motion to one for summary judgment. See Mercado v. HFC Collection Ctr., Inc., No. 3:12-cv-122-J-12JBT, 2012

WL 6098532, at *3 (M.D. Fla. Dec. 7, 2012), report and recommendation adopted, 3:12-cv-122-J-12JBT, 2013 WL 55948 (M.D. Fla. Jan. 3, 2013) (citing, inter alia, Fed. R. Civ. P. 12(d)).

(Underline added.)

In the present matter, GEICO does not want the Court to look outside the pleadings. GEICO seeks to preclude HENRY BARON, the defendant/Counter-plaintiff, any opportunity to engage in discovery. Discovery would include GEICO having to explain its written misleading and fraudulent statements—both written and oral--which induced Counter-plaintiff to purchase boating insurance with GEICO on representations that Counter-plaintiff and his family would be protected if they were struck by an uninsured vessel. (D.E. 17, Counterclaim, paras. 34-49.) Because factual issues do abound in this action, and because BARON's Counter-claim is well-pled under a <u>Twombly</u> standard, the Court should decline GEICO's pre-discovery Motion For Judgment on the Pleadings.

## BARON'S COUNTERCLAIM

Initially, though GEICO's Motion (D.E. 24, pp 10-13) attacks it, BARON's Counterclaim spelled out in detail how he sought coverage for himself and his family, relied upon GEICO's representations, suffered a loss, and then GEICO claimed there was no coverage despite the prior conduct and representations of GEICO:

34.     Counter-Plaintiff, HENRY <u>BARON, sought for purchase from Counter-Defendant a valid policy of marine insurance which would provide</u> for Agreed Value Coverage of the boat, motor and boat equipment, <u>Liability Coverage, Medical Payments Coverage, and Uninsured Boater Coverage</u> in the event of a casualty to him or his family.

35.     Counter-Plaintiff, HENRY <u>BARON, completed GEICO's insurance application form on-line</u>.

36.     Counter-Plaintiff, HENRY <u>BARON, specifically checked the box in the application</u> which would provide <u>for Uninsured Boater coverage on GEICO's insurance application form on-line</u>.

37.     <u>After completing the on-line application</u> of GEICO, HENRY <u>BARON directly contacted GEICO about the application for insurance and apprised the GEICO representative that he wanted coverage for uninsured boater like what he had for his vehicles</u>.

38.     <u>After completing the on-line application</u> of GEICO, HENRY <u>BARON directly contacted GEICO</u> about the application for insurance <u>and apprised the GEICO representative that he wanted coverage for uninsured boater to cover himself and his family for all events against an uninsured boater for when the family was snorkeling, diving, water skiing, and riding in his vessel</u>.

39.     <u>At no time did the GEICO representative advise HENRY BARON that activities such as snorkeling, diving, water-skiing, would not be covered by GEICO under the Uninsured Boater coverage being sold by GEICO</u>.

40.     <u>At no time did the GEICO representative advise</u> HENRY BARON <u>that the Uninsured Boater coverage being sold by GEICO would *only* apply if all three of the following existed: 1. another vessel struck HENRY BARON's vessel and 2. HENRY BARON was in the vessel and 3. the other vessel was un-insured</u>.

41.     <u>GEICO's application did not apprise</u> HENRY BARON that <u>he would be able to collect uninsured benefits *only* if: 1. another vessel struck HENRY BARON's vessel and 2. HENRY BARON was in the vessel and 3. the other vessel was un-insured</u>.

42.     <u>GEICO's on-line application indicated that</u> such **"Uninsured Boater's"** <u>coverage would cover in instances of "Uninsured Boaters" and in instances of "hit-and-run" boaters</u>.

43.     <u>Based upon the representations of GEICO's on-line application</u> form, <u>and representations made by GEICO when the Plaintiff specifically conferred and asked for Uninsured Boater's coverage to include all events against an uninsured boater for when the family was snorkeling, diving, water skiing, and riding in his vessel, HENRY BARON purchased the insurance with GEICO</u>.

44.     In misrepresenting the facts above--of when the "Uninsured Boater's" coverage would apply--the <u>Counter-Defendant misrepresented a material fact</u>.

45.     <u>GEICO knew</u> or should have known <u>that their statements and representations were false as to what and when "Uninsured Boater's" coverage would apply</u>.

46.    GEICO's (sic) intended its statements and representations as to what and when "Uninsured Boater's" coverage applied would induce—and did induce HENRY BARON—to purchase boater's insurance with GEICO.

47.    The Counter-Plaintiff's reliance upon the representations and statements of GEICO were justifiable, but have now caused harm and losses to HENRY BARON in that GEICO seeks to avoid coverage for Uninsured Boater's coverage inconsistent to the representations GEICO previously made to him.

48.    The medical bills sustained by HENRY BARON and the complete loss of his arm when being struck by the other vessel has caused significant damages—which GEICO refuses to pay.

49.    As a direct and proximate result of GEICO's fraudulent inducement GEICO now refuses to pay for the suffered bodily injury, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition--which losses are either permanent or continuing that Counter-Plaintiff will suffer in the future.

(Underline added.)(Original numbering.) [1]

In GEICO's attempt to attack BARON's fraudulent inducement count against GEICO

(D.E. 24 pp 10-13.) it claims BARON failed to allege (**in bold**):

    (1) **A false statement regarding a material fact**;

        That is found and explained in paragraphs 37-43, 44 of BARON's Counter-Claim

        (above).

    (2) **The statement maker's knowledge that the representation was false**;

        That is found in paragraphs 37-43 generally, but specifically in paragraph 45.

    (3) **Intent that the representation induces another's reliance**;

        That is found in paragraphs 37-43 generally, but specifically in paragraph 46.

    (4) **Consequent injury to the party acting in reliance**;

---

[1] In addition to the foregoing Fraudulent Inducement count, the Counter-plaintiff also counter-sued for Breach of Contract, and a claim for Uninsured Benefits in his Counter-claim (D.E. 17).

That is found in paragraphs 37-43 generally, but specifically in paragraphs 47, 48, 49.

GEICO further alleged, "Even accepting the allegations as true, they do not allege a false statement regarding a material fact, the statement maker's knowledge that the statement was false or reasonable reliance on such statement by Baron." (D.E. 24, p. 10, GEICO's Motion For Judgment on the Pleadings.)    GEICO appears to be trying to impose some form of summary judgment review of facts in their Motion For Judgment on the Pleadings. The Counter-claim of BARON clearly pleads a claim for Fraudulent Inducement as is easily viewed by the language reproduced above directly from BARON's Counter-claim. The Counter-claim explains that BARON sought full coverage for his vessel. He filled out GEICO's on-line form. He took the additional step of checking the box for "Uninsured Boater's" coverage. (See attached Exhibit A, GEICO's Application for Insurance Exemplar.) Then, *after* completing GEICO's application for insurance BARON contacted GEICO by phone to make sure he would be covered for the events he planned with his family. BARON was assured by GEICO that he would be covered for the events for which he asked for clarification. The GEICO application became part of the insurance policy.

> Florida law provides **that an insurance contract is to be "construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto**." § 627.419(1), Fla. Stat. (1993). Over thirty years ago, the Florida Supreme Court read this language to say: **"The application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance.**" Mathews v. Ranger Ins. Co., 281 So.2d 345, 348 (Fla.1973). The trial court thus erred in concluding that the 1994–95 application did not become a part of the 1994–95 policy.

> (emphasis added)

Zenith Ins. Co. v. Commercial Forming Corp., 850 So.2d 568, 570 (2nd DCA 2003)

Under Florida law, an insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1) (emphasis added). In addition, **"[t]he application ... becomes part of the agreement between the parties and the policy together with the application form the contract of insurance."** Matthews v. Ranger Ins. Co., 281 So. 2d 345, 348 (Fla. 1973). See also Zenith Ins. Co. v. Commercial Forming Corp., 850 So. 2d 568, 570 (Fla. 2d DCA 2003) **(holding that application becomes part of the policy)**. As a result, the Court finds that Plaintiff's signature on the Application, via its manager, which became a part of the Policy, is sufficient to constitute a signature on a written agreement to arbitrate.

(emphasis added)

Gold Coast Property Management Inc. v. Certain Underwriters at Lloyd's London, 2019 WL 2482058 (Slip Copy)(S,D, Fla. June 14, 2019)

GEICO's on-line application misleads applicants and misled HENRY BARON. Within GEICO's on-line application completed by BARON, GEICO has a dropdown section entitled **"View & Select Extra Coverage".** (See Exhibit A) Within this section of the application BARON found **"Family Medical Payments Coverage (Per Person)".** Above the section is the icon that explains what GEICO means by that coverage. A subsequent box in the GEICO application is titled **"Fuel And Other Spill Coverage"**.  Above that, in plenary language an icon explains

> **"Provided in addition to policy's liability coverage, this covers discharge of oil or fuel occurring during a sinking, fire, collision, or grounding. Important coverage as many federal and state laws hold boaters accountable for cleanup, containment, and environmental damage."**

Next within GEICO's application is **"Uninsured Boater's Protection".** GEICO's icon proclaims this **"Provides coverage for injuries caused by an uninsured boat or a hit-and-run boat."** HENRY BARON went through GEICO's application and selected **"Uninsured Boater's Protection"** based upon the representations in GEICO's application.

Two factual points stand out in GEICO's application language used to induce boaters to purchase GEICO's **"Uninsured Boater's Protection".** One is that there is <u>no</u> <u>explanation</u> that this coverage <u>will</u> <u>not</u> <u>apply</u> unless 1. the insured person is in his own vessel, *plus* 2. the vessel must be physically struck by another vessel, *plus* 3. that vessel must be completely uninsured.[2] Second, GEICO has the clear ability to advise potential customers that they will *only* be covered when all three of these conditions are met together at the same time. GEICO doesn't advise that significant limitation. We know that GEICO has the ability to apprise its new and potential customers forthrightly because right above the **"Uninsured Boater's Protection"** section is the **"Fuel And Other Spill Coverage"** section wherein GEICO does devote an entire paragraph (See above) explaining what **Fuel Spill** insurance covers *and* why it is important. Clearly GEICO could have disclosed its **"Uninsured Boater's Protection"** coverage, simply, by advising potential new customers:

In order for this coverage to apply:

1. You must be in your vessel. 2. It must be struck by another vessel. 3. That vessel must be uninsured or a hit-and-run vessel. These factors all have to occur at the same time—or there is no coverage.


Had GEICO been forthright in its coverage description—which it was clearly capable of doing--HENRY BARON would have been in a positon to seek boating insurance elsewhere because such coverage did not align with what he expressed to GEICO he wanted for himself and his family. (See D.E. 17, Baron Counter-claim, paras. 37, 38, and 43, above.) Then, had

---

[2] GEICO admits in its Motion, and surprisingly trumpets the fact, that GEICO refuses to cover an insured customer—apparently regardless of the extent of injuries--(and here Mr. Baron's arm was completely severed and never recovered) when the other vessel has even some minimal level of liability insurance. (D.E. 24, pg 9, FN 2) GEICO: "[D]oes not include a boater who has inadequate coverage, but only to one who has no coverage at all or who cannot be identified."

GEICO explained to HENRY BARON, *in his follow up call to GEICO* after completing the application, that the **"Uninsured Boater's Protection"** provided only very limited coverage not in keeping with BARON's objective, BARON would have sought coverage elsewhere. GEICO's representative assured BARON that his family would be covered in the event of being struck by a vessel while snorkeling, scuba diving, or skiing. (D.E. 17, para 43)

BARON's Counter-claim explains in great detail that he both filled out GEICO's on-line application and he then called GEICO just to make sure he would be covered for swimming, snorkeling, skiing, etc., and BARON relied upon both of GEICO's representations. GEICO's assertions to the contrary that somehow BARON has not plead facts sufficient to survive a Rule 12(b) or 12(c) motion, suggest GEICO is not reading BARON's Counter-claim. Because of the misleading manner in which GEICO presented its on-line application GEICO certainly seeks to avoid discovery of that situation. GEICO further seeks to avoid having to disclose any notes which GEICO possesses arising from HENRY BARON calling to GEICO about the uninsured boater's coverage. The fact that GEICO would keep notes on a potential customer is not novel.

The case of <u>GEICO Marine Insurance Company v. Shackleford</u>, 316 F.Supp 1365 (M.D. Fla 2018) is a contemporary case to the instant case wherein GEICO sued its insured in a declaratory action and claimed GEICO did not owe that insured for damages to a sailboat. GEICO claimed that its new insured had not disclosed certain negative information about the sailboat during completion of the GEICO application and therefore when the vessel sustained damage GEICO contended that the policy on its face precluded coverage. However, the court there at trial found for the plaintiff because the insured plaintiff proved he had called and discussed with GEICO his plans for the vessel—and discovery proved GEICO had extensive log notes which documented the phone call(s) and documented GEICO's knowledge which ended up

negating GEICO's policy exclusions and denial. (Id. at 1373-75.) In the instant case, *after* HENRY BARON completed the application for insurance, he called GEICO to confirm that the coverage he had just purchased would cover his needs and he was assured by the GEICO representative that indeed the coverage was consistent with what he believed he purchased.

**POLICY LANGUAGE AND LACK OF PHYSICAL CONTACT**

The following section begins with a discussion of vehicles, and this is for a reason.

Florida law does not require physical contact between vehicles in order for uninsured motorist's coverage to be effective. The Florida Supreme Court in <u>Brown v. Progressive Mut. Ins. Co</u>.,  249 So.2d 429 (Fla. 1971) explained the efficacy, rationale, and public policy behind such. [3]

In the instant case, the injured petitioner's vehicle was run off the road by a hit-and-run driver, but it is not known that physical contact was made between the two vehicles. By **application of the policy requirement of physical contact**, the District Court of Appeal concluded that the injured person was not entitled to a recovery; this reversed the ruling of the trial court, which found that the restrictive clause was void as against public policy, being an attempt to restrict the language of Fla.Stat. s 627.0851, F.S.A, the uninsured motorist statute.

> **The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.** The effect of the District Court of Appeal decision here for review is to place

---

[3] See also, *Massa v. Southern Heritage Ins. Co.*, 697 So.2d 868, (Fla.App. 4 Dist. 1997)  Lack of physical contact between insured's vehicle and another vehicle or some other object or between insured and some part of his vehicle does not preclude recovery of benefits.

on the injured person in every case the burden of proving that the offending party was without insurance regardless of the circumstances, the equities or the difficulties. Failure on the part of the injured party to make such proof results in nonrecovery, and the certainty that in some cases at least, **injured persons then become the burden of society or of the state, despite their attempt to protect themselves by purchase of insurance intended to shield them against damages inflicted by a party from whom recovery cannot be made in person or through his insurance.**

In deciding whether a person is entitled to the protection of Fla.Stat. s 627.0851, F.S.A., the question to be answered is whether the offending motorist has insurance available for the protection of the injured party, for whose benefit the statute was written; the test should not be simply whether or not the injured party can prove the offending party was uninsured, which is, in many instances, impossible in hit-and-run cases. Any other construction of the statute is unfair and unduly restricts the application intended by the Legislature.

**The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did.** This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. **If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact**. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review.

It is noted that this is in the context of motor vehicles; however, the uninsured motorist's statute--now found at F.S.§ 627.737--did not require physical contact with another vehicle before uninsured motorist's coverage could be tapped by the insured. The Florida Supreme Court eliminated this insurer-created requirement of "physical contact" upon the above-stated public policy considerations, and recognized that a primary purpose of "physical contact" was to prove an incident was actually caused by a tortfeasor and not just by the insured. The Florida Supreme Court decided that the public policy in Florida is that those who protect themselves and obtain uninsured motorist's coverage should receive the benefit of that coverage—even where there is no physical contact between two vehicles—rather than society or the insured victim having to bear the expenses brought by an uninsured tortfeasor. Today, this remains the public policy of the State of Florida.

In the present matter, GEICO is selling **"Uninsured Boater's Protection"** which it describes in its own application as covering "**injuries caused by an uninsured boat or a hit-and-run boat."** GEICO does not explain to Florida residents—and did not explain to HENRY BARON even after he specifically asked--that in order for the coverage to apply, the insured must be <u>in</u> their boat, that boat <u>must be struck</u> by the other vessel, and which must be <u>UN</u>insured. Even GEICO admits that if the tortfeasor boater has *any* liability insurance at all, then GEICO's **"Uninsured Boater's Protection"** will not apply. (D.E. 24, pg. 9, FN 2)

In <u>Brown</u>, the Florida Supreme Court long ago explained

> The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.
> <u>Id</u>.

The rationale for this public policy should not be lost because it arises from the automobile context. The Florida statute did not require physical contact between vehicles for an insured to recover—which of itself is a policy pronouncement by the Florida legislature—and it was the Florida Supreme Court which decided it would be against public policy to allow an insurer to try to enforce such a requirement. There is no public policy which supports this insurer's mandatory-contact stance. It is against the public policy of Florida as evidenced by the Florida legislature's choice not to require it, and as evidenced by the Florida Supreme Court striking it out of insurance policies. Another public policy against a physical-contact requirement is that it essentially precludes almost every casualty, except in one limited instance.

### "Uninsured Boater's Protection" Is Nearly No Protection At All

GEICO chooses to sell **"Uninsured Boater's Protection"** but which in actuality covers exceptionally few scenarios. The coverage sold by GEICO is less an **"Uninsured Boater's Protection"** coverage than it is only a collision coverage which covers injuries as long as the other vessel was uninsured. In selling its **"Uninsured Boater's Protection"** GEICO makes no attempts to describe the plentiful exceptions to its proclaimed ***"Uninsured Boater's Protection"***.

By GEICO's own explanation in its Motion For Judgment on the Pleadings, GEICO's **"Uninsured Boater's Protection"** exceptions would NOT cover any situations in which

An at-fault vessel forces the insured vessel to crash into another vessel or structure.

An at-fault vessel swamps and sinks a smaller vessel.

A larger vessel produces a large wake and passengers on the insured vessel are injured in the subsequent pounding of the large wake.

A larger vessel produces a large wake and ejects a passenger from the insured vessel.

An at-fault vessel strikes an insured standing next to his vessel, but the at-fault vessel does not physically touch the insured vessel.

An insured is struck by an at-fault vessel while swimming next to his vessel.

An insured is struck by an at-fault vessel while snorkeling next to his vessel.

An insured is struck by an at-fault vessel while scuba diving next to his vessel.

<u>Any</u> of the above casualty situations if the tortfeasor has even minimal liability insurance.

None of these exceptions are represented to GEICO applicants, like HENRY BARON, at the time they sign up with GEICO on-line boating insurance. Rather, before and after HENRY BARON signed GEICO's insurance application, GEICO represented to him that he was purchasing, and had purchased, **"Uninsured Boater's Protection"**. In actuality the

coverage offered by GEICO and presented as **"Uninsured Boater's Protection"** covers only when another vessel collides with the insured vessel, <u>plus</u> the insured is physically on the insured vessel, <u>plus</u> the other vessel has no insurance.

GEICO might contend that it is at liberty to sell whatever level of insurance they choose. However, there are two points which go against them in such thinking. One is found in <u>Brown</u> above, where the Florida Supreme Court discusses that the very reason to have "uninsured" coverage is for the protection of the *insured*, and that it is a public policy of Florida that such insurances should actually cover the insureds and not be construed in such a way as to deny coverage.

> The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did.

<u>Id</u>.

The second point, discussed below more fully, is that GEICO did not apprise its customer of the severe restrictions in "uninsured" coverage under its **"Uninsured Boater's Protection".**

The exclusions attempted to be imposed here on HENRY BARON effectively negated uninsured boater's coverage down to a very small instance of possibility, and leaves open a far wider scope of casualties which are uncovered. This coverage is akin to playing a slot machine wherein the only time the insured wins is when they get all three bars in a row, but he loses in every other instance. Such is not **"Uninsured Boater's Protection"**; it is a narrowly tailored boating collision policy. The description on GEICO's on-line application, and the follow up description given to HENRY BARON when he called GEICO, is and was inconsistent with an actual **"Uninsured Boater's Protection"** policy.  In addition to the deceptive manner in

which GEICO purveys this **"Uninsured Boater's Protection"**, this is clearly against

public policy of Florida which the Florida Supreme Court found favors coverage

> The effect of the District Court of Appeal decision here for review is to place on the injured person in every case the burden of proving that the offending party was without insurance regardless of the circumstances, the equities or the difficulties. Failure on the part of the injured party to make such proof results in nonrecovery, and the certainty that in some cases at least, <u>injured persons then become the burden of society or of the state, despite their attempt to protect themselves by purchase of insurance intended to shield them against damages inflicted by a party from whom recovery cannot be made in person or through his insurance.</u>

Id. (Underline added.)

It is inconsistent with the public policy of Florida that a cautious and responsible boater,

like HENRY BARON, purchased **"Uninsured Boater's Protection"**, here in the

stipulated amount of $300,000.00, and which could be completely negated if the tortfeasor had a

$10,000 liability policy.   GEICO is selling its self-described **"Uninsured Boater's**

**Protection"**, which covers only the narrowest of situations and leaves its insured with

damages for which the insured sought coverage.

This court, consistent with the public policy of the State of Florida should strike

GEICO's policy language which negates coverage unless there is physical contact with the

insured's vessel and should strike the requirement which negates coverage unless the insured

was physically in the vessel. The instances where this GEICO coverage will apply are very few,

and it fails to provide the coverage and protection sought.  As the Florida Supreme Court stated

> The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.

Id.

## Interpretation of Marine Insurance. State Law. Construed Against Insurer.

The Shackleford case above which GEICO brought against its insured is instructive as to what law governs, the interpretation of marine policies, and which party bears responsibility for any ambiguities.

"[I]n the absence of a specific and controlling rule, the **interpretation or construction of a marine insurance contract is to be determined by state law**." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1313 (11th Cir. 2000); *see Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) ("[A]dmiralty courts will generally look to appropriate state law in determining questions involving a marine insurance contract."). **As there is no controlling rule of federal law governing interpretation of inconsistencies between an insurance policy and an endorsement, the interpretation of the policy is determined by Florida law**. *See LaMadrid v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 567 Fed.Appx. 695, 699 (11th Cir. 2014); *Fenby v. M/V Three D of Guernsey*, 217 Fed.Appx. 846, 848 (11th Cir. 2007).

**Under Florida law, an insurance policy should be construed in its entirety and given a construction reflecting the intent of the parties**. *Gulf Tampa Drydock*, 757 F.2d at 1174. " '**[I]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous.'** " *Ruderman ex rel Schwartz v. Washington Nat. Ins. Corp.*, 671 F.3d 1208, 1211 (11th Cir. 2012), *certified question answered sub nom. Washington Nat. Ins. Corp. v. Ruderman*, 117 So.3d 943 (Fla. 2013) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000) ). And when policy language is unclear, "the language must be construed against the insurer." *Gulf Tampa Drydock*, 757 F.2d at 1174. **Finally, and significant here, "to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls**." *Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London*, 696 So.2d 376, 379 (Fla. 1st DCA 1997).

**GEICO Marine Insurance Company v. Shackleford** United States District Court, M.D. Florida, Tampa Division. April 19, 2018 316 F.Supp.3d 1365, 1372. (Underline and emphasis added.)

In the instant case the GEICO application is inconsistent with the policy language being urged by GEICO. The application expresses itself as **"Uninsured Boater's Protection"**,

and GEICO's description is that this coverage will give the customer: **"Provides coverage for injuries caused by an uninsured boat or a hit-and-run boat."** This is a misrepresentation by omission. GEICO's application in no way expresses the severe restrictions involved in the policy which distills the **"Uninsured Boater's Protection"** down to one fortuitous event, and excludes every other uninsured boater scenario for which a customer reasonably would use uninsured boater coverage. It essentially covers one single situation—an insured struck on his vessel by another vessel which has no insurance—but the GEICO application does not apprise that it will essentially cover this one scenario.

Not only is the application inconsistent with the policy language, worse still, BARON contacted GEICO and spoke to a GEICO representative to assure he and his family would be covered for the events for which he had just purchased this new vessel. GEICO assured him he would be covered for snorkeling, skiing, scuba diving, etc. (D.E. 17, BARON Counter-claim.) Though GEICO characterizes the situation as they are not compelled to "fully explain to a potential insured all of the conditions and nuances of coverage" (D.E. 24, pg. 13), that is not what happened here. GEICO put out for sale uninsured boater's coverage, but failed in even simplest terms to apprise BARON of the severe restrictions on that coverage. GEICO confounded the misrepresentation by omission to him by saying only: *"Provides coverage for injuries caused by an uninsured boat or a hit-and-run boat."* Again, a reasonable person can find that such omission was intentional in that GEICO writes a plenary explanation right next to this "uninsured boater" offering where it explains what "**FUEL SPILL**" coverage covers and why an applicant needs it.

The Court is within its rights as a matter of public policy to strike the offending provisions within the GEICO policy. The Court is also within its rights to conclude that there is a conflict and/or an ambiguity between the application and the policy itself. The Court is equally within its rights—as in <u>GEICO v. Shackleford</u> above--to find that GEICO misrepresented the coverage when HENRY BARON specifically called to confirm—and received confirmation-- whether he and his family would be covered. At this point multiple factual issues preclude the Court granting Judgment on the Pleadings in favor of movant GEICO. Again, no discovery has been done by either party at this early stage of the case. GEICO is at liberty to bring a summary judgment motion at some point in the future. While GEICO spends time in its motion discussing BARON'S affirmative defenses, it appears clear that GECIO's motion cannot be granted at this time because of multiple issues of fact. This is not a Motion To Strike Affirmative Defenses by GEICO, rather it is a Motion For Judgment on the Pleadings—in which the pleadings are looked at together as a whole. GEICO may have its grievances relative to some affirmative defenses, but this is not the vehicle to strike them. BARON's pleadings also comport with a <u>Twombly</u> analysis.  It is clear from the pleadings taken as a whole that GEICO is not entitled to a Motion For Judgment on the Pleadings at this time.


WHEREFORE, the defendant/Counter-claimant, HENRY BARON, respectfully requests the Court will summarily DENY the Plaintiff-GEICO's Motion For Judgment on the Pleadings, and that the Court will provide any other relief deemed appropriate by the Court.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by E-mail transmission through the CME/ECF system on this 20th day of June, 2019, to TED L. SHINKLE, ESQ., LESLEY-ANNE MARKS, ESQ., GRAY ROBINSON, P.A., 1795 West NASA Blvd., Melbourne, Florida 32901, ted.shinkle@gray-robinson.com, Lesley-anne.marks@gray-robinson.com, jodi.aliano@gray-robinson.com.

**FRANK D BUTLER, ESQUIRE**
_____
Frank D. Butler, Esquire
FBN: 940585
Kelly Ann L. May, Esquire
FBN: 59286
Frank D. Butler, P.A.
10550 U.S. Hwy. 19 North
Pinellas Park, FL 33782
Tel: (727)399-2222
Fax: (727)399-2202
fdblawfirm@aol.com
kmay@fightingforfamilies.com
pmartin@fightingforfamilies.com
Counsel for Plaintiff